1-974 from the District of Minnesota, Jane Doe v. North Homes, et al. Mr. Storms? Good morning, Your Honor. I represent the Plaintiff Appellant in this matter. I want to make clear for the Court from the outset, I'm asking the Court to consider the granting of the 12B6 motion. We did not brief the motion to amend or to alter, reconsider, and in bringing that motion, the purposes of it was to ensure that we had a final judgment, because I thought under Eighth Circuit precedent, there was some question about the order that the Court had entered and subsequent judgment, since it was not clear on whether or not we were given the opportunity to amend, and the Court had dismissed the complaint and not the action. At this point in time, we did appeal from all of these orders, and it's properly before the Court, and there is no argument to the contrary. So Your Honors, the issue before you is this. We've plausibly alleged that a minor was involuntarily detained at a juvenile detention center where she was sexually abused, in addition to suffering additional violations of her 14th and First Amendment rights. We've pleaded the Eighth Amendment as well, but that's purely in the alternative. Given that very simple statement... Mr. Storch, can I just clear up one thing? Your introduction was a little unclear to me. Are you saying that the issue of the denial of the motion to alter judgment is not before us? Not to the extent we're seeking to amend, Your Honor, correct. We're looking solely for the 12B6, for the Court to reverse the initial 12B6 motion ruling. Okay, I got it now. Thank you. Which we have preserved properly. So Your Honors, the District Court dismissed this solely on one issue. The Court said that the defendants in this case did not act under color of state law for purposes of Section 1983. All authority reflects that private prisons and similar detention facilities act under colors of state law. The plaintiff has alleged that she was involuntarily detained in a private detention center. There's no authority to the contrary to hold that a private juvenile detention center does not act under color of state law. Counsel, let me begin with a simple question. As I looked at your complaint, there's no contract, at least you don't plead, that there's no contract between North Holmes and the state, right? Your Honor, we did not allege a specific contract, but there's two points to that. One, we allege that they engaged in concerted action, and we allege facts that show that in the 24-7 custody of defendants North Holmes. When we review a complaint, we're allowed to apply common sense and reason, and common sense and reason would suggest that there are going to be contracts and agreements between the state and between the entity that's taking 24-7 control over the mine. Okay, well then you would concede, because you know, I'm sorry, I don't know anything about Minnesota, but in Missouri at least, juvenile courts have extreme authority in that they can just give a chewing out or put somebody in jail or send them to treatment centers. You don't, you're not arguing that just to a treatment center, that that implicates 1983. Your Honor, I think that in each instance, we have to weigh facts, right, so I don't think it's fair to say just because it's a treatment center, they're not acting under color of state law. You know, Your Honor's own opinion in Americans United, you know, discusses a rehabilitation program that takes place. Yeah, but that's a part of a prison, counsel. That's completely different, right? I don't believe- Adults in part of a prison, that's contract, that wasn't contract, that's part of the prison. And I don't believe it is, Your Honor, because here we've alleged that she was maintained and sexually abused in the correctional unit, which is for all intents and purposes, a jail where we reflect- Okay, so you say we don't have to talk about treatment. I was trying to get you to say that, I think. And we don't have to talk about treatment. That's entirely true, Your Honor. Yeah, I thought you were disputing a treatment place, but go ahead. No, I think- Counsel, you were talking about the precedent for private prisons basically, you know, acting under color of state law. How do we deal with Richardson v. McKnight and the court's statement that correctional facilities have never been exclusively public? What do we do with that? Well, Your Honor, I think the statement in Richardson would be in direct contrast to other authorities such as West v. Atkins. You know, the United States Supreme Court makes clear that providing medical services to inmates is a public function. And that rests purely on the notion that providing incarceration or detention is a public function. And so if we're talking about detaining someone in a correctional setting, Your Honor, I don't think we could get past that understanding from West v. Atkins. And the Fifth Circuit has noted that, you know, and inferred that the Supreme Court has acknowledged this public function. And I do think the public function is what's critical there. You know, I know Judge Benton was discussing the contract issue that really just goes to the question of joint action, which I while I think is settled here, it doesn't go to the public function question. And all authority that we have has found that juvenile detention centers are providing the public function of detaining youths. Now, I've argued this issue three times now, and the first two times the result was remarkably different. Judge Schiltz basically discouraged the defendants from even carrying on with the argument at oral arguments and denied the motion and found a virtually identical institution in Minnesota acts under color of state law, and that would be Youth Services International, which the High Point Court in South Dakota actually cited to the American United's opinion to say Youth Services International engages in joint action because the only way they can detain these youth is through their joint action with the state. The other instance where I've had to address this argument, Your Honors, was in the Roe v. North Holmes matter, which has since resolved. There, Judge Magnuson canceled oral argument, which almost never happens in Minnesota, and he denied the motion, finding that here and generally the question of state action requires a sifting of facts, which the court has long told us since Lugar. So that was just settled, right? Since argument set in this case? Yes, it was settled several months ago, Your Honor. I thought it was February 3rd, according to the court records. Is that correct? That may have been when the stipulation for dismissal was entered. But yes, Your Honor. So that matter was resolved, and that's the critical question for the court in looking at either the public function or the joint activity test. Are there facts that need to be sifted through to analyze state action or whether or not the actor is under color of state law? And of course they are. We have a juvenile detention center that's holding somebody involuntarily. We have a minor who's involuntarily detained, who's sexually abused by a correctional officer. Mr. Storms, was it pled that she was there because she had been a judge delinquent or convicted of a crime or sentenced to some sort of term of imprisonment or some sort of juvenile equivalent of that? That was not pled, Your Honor. But what was pled was that she was placed there by the state. And then North Holmes made the determination to place her in the correctional unit. So they chose to detain her in the jail cell through the authority that was given them to the state. And as we have alleged, they obtained that authority through various court orders, which would be explored further in this case on discovery, Your Honor. So while she was placed by the state, and again, not her parents, she was in the legal custody of the state. And then they made a 24-7 transfer of her custody to North Holmes. And at that point in time, North Holmes used its authority given to it by the state and precisely how to be discovered further in the case to hold this girl in a jail cell where a correctional officer abused and assaulted her. Is it the fair understanding of your complaint that she was sent to the DHS, the human services unit, and then the North Holmes, sorry, then they're the ones that put her in the DOC unit, the corrections unit, right? Exactly, Your Honor. And so North Holmes placed her in the DOC and through, again, through its authority with court orders and exactly what the circumstances of events were that gave them the authority to do that is something that's borne out on discovery. And I understand Your Honor is asking that probably along the lines of a joint activity test, which is different than obviously a public. There's a big gap, I think, between paragraphs 31 and 32 of your complaint. And how do we interpret the movement of her from DHS, which probably wouldn't be too bad to be more like the treatment stuff to DOC unit? Well, I think what we have to do, Your Honor, is not necessarily look at it solely as a joint activity test, but also look at as the public function that detaining a youth in a DOC correctional setting is detaining that youth in accordance with the powers vested in it by the state. And so I think generally when we look at these for a matter of jurisprudence, if someone's being held in a correctional setting, as the courts have repeatedly held in the juvenile context, that we're talking about the public function of detention at that point. Now, the High Point Court sort of touched on and built on Your Honor's opinion, Americans United, and said, well, it's really like a joint activity issue because they're using the power vested in the state to go ahead and to detain the youth under those circumstances. Ultimately, I think it's important that we're not rigid about this at this stage in the proceedings. The courts told us in Lugar and Brentwood that we don't necessarily have bright line tests that we have to follow. The critical question is we have to sit we have to sift through facts. And then are we plausibly alleging that someone acted under color of state law? And here we have an entity that is licensed by the DOC to detain youth in facilities that, as Your Honors can see from the materials, are clearly akin to jail cells. We have bars on the windows. We have concrete beds with just a thin mat on it. And that institution is using that authority to decide whether or not to move these youths in and out of a jail cell. And then from the 12B6 standpoint, where we're supposed to be given the inferences and apply common sense and reason when we're making those inferences, it is certainly reasonable for the court to make the inference that there are likely contractual there in the institution. They're a private entity. They're not doing this for free. They're going to expect to get paid. And if Canobie County is this legal, is the girl's legal guardian, the only logical conclusion is that Canobie County is likely paying and contracting with North Homes to house this youth. Well, another form of treatment is nursing homes. And if a state puts an abandoned old person who doesn't know what they're doing in a nursing home, would you claim that that meets the test for constitutional torts and other things? Would you? Well, what I'd say as a result of my lawsuit, Your Honor, is that I'm going to look at the facts of every single facility first. That's very hypothetical. I get your point. But but no, but to your point, Your Honor, nursing homes don't have jails. You know, you can't. You know, I think we won't we won't pursue that anymore on my behalf. OK, but but I think that I do think that that's a that's a critical distinction that we have here. The court really seemed focused on questions of civil commitment and medical treatment. But here we have the critical addition of the Department of Corrections units. And that's where the harm befell this girl. And that's the unit that was used as punishment for this girl. Mr. Storms, I note your clock is running out. Would you like to reserve a little time for rebuttal? Yes, Your Honor. I'll reserve the rest for rebuttal. Very well. Thank you, Mr. Leighton. Yes, good morning, Your Honors. It's a pleasure to be here. I'm Steve Leighton. I represent the Appalachians in this case, North Homes Inc. and Connie Ross. Your Honors, we believe Judge Wright properly dismissed this case on 12 and six because the Jane Doe complaint did not meet the Iqbal-Twombly standard. And if we walk through the complaint, paragraphs one and two of the complaint, we're alleged to be a youth detention and residential treatment center that provides correctional and rehabilitative services and mental health services. That's not a jail or a prison in our view. It says correction. You just read the word corrections counsel to me. That sounds like a jail. Well, Your Honor, I think we're more than that. And if you look at the appendix, pages one through five, which is our North Homes website that was provided by Mr. Storms in this case, I think the court takes a look at that document. I think it I think it aids our argument because when we look at the secure detention center, which is appendix four, it walks through what kind of services we provide in that setting. Which is programming to youth, school versus ISD 318, recreational activities, chemical health education and mental health services. And we've got the consequence program, which I think is important for the court to take a look at there. In our view, these factors do not lend themselves to a jail or a prison. And the consequence program basically is our counselors are working with these youth to try to manage their feelings, their mental state. And you'll see here that they work in cognitive behavioral groups when they're in the secure unit. So the overall mission statement of North Homes is to provide a community based continuum of quality care to children and families. But counsel, was Jane Doe free to leave? In the secure unit, Your Honor, no. And she was in the Department of Correctional Units, right? Department of Corrections Unit. That's right, Your Honor, yes. So my follow up question is, under whose authority was she being detained? North Homes or the state of Minnesota? Well, Your Honor, from the pleading, that's not clear. And that's really our point. When you look at paragraph 31 of the complaint, the Jane Doe, North Homes involuntarily detained Jane Doe in the Itascan DOC licensed unit for behavioral issues. So we would suggest to the court that we're not sure that that really identifies a constitutional harm that's been alleged in terms of, you know, denial of medical care, you know, refusing to let her out, et cetera. And when we look at the cases that have identified those constitutionally protected harms, that has not been pled here. Let me ask you a question, counsel. The Supreme Court has said for 60 years, back to Burton case where we started all this and in Lugar, they've said that this inquiry is necessarily fact bound, unless it's really obvious. I'm paraphrasing Burton, but it says non-obvious. I'm not paraphrasing at most. Unless it's really obvious, you've got to sift the facts and weigh the circumstances. Gosh, this at least gets to summary judgment, doesn't it? Well, Your Honor, I think if we take a look at Eqbal and Twombly, I think the answer to that question is no. When we look at the Eqbal and Twombly standards and as this court, as you pointed out, judging the Madden case, if I'm pronouncing that right, they have to do something more here. They have got to plead this with specificity and factual support. They have to allege that there was a meeting of the minds, that there was a mutual understanding. And we don't believe that they've done that, Your Honor. Well, for the public function test, they don't have to plead that at all, do they? Just they performed a public function, period, right? Yes, but then that has to be in conjunction with and when we look at that allegation, they allege that North Holmes fulfilled a public function of juvenile incarceration, detainment and commitment and acted in concert with state actors. So I think there's something more beyond just the public functions piece. They still have to link that up. And we think Judge Wright properly ruled that this complaint did not allege properly that there was a delegation of the state's authority of any public function to North Holmes. There are no facts that are put in the complaint to that. And my esteemed opponent, Mr. Storms, essentially says that exactly what piece is not in the complaint. But counsel, under a plausibility standard, aren't there reasonable inferences given here? And wouldn't it be reasonable to assume that someone couldn't be detained in a state facility? Well, Judge, under the plausibility standard, we can't use labels or conclusions or formulaic recitations of the elements of the cause of action. And so our position is that when we walk through the complaint, they have not done that in a plausible manner. And there is no allegation that the state assigned us the authority to detain Jane Doe. The complaint states that... Counsel, now, you referred to website, and I think both of you have used the website. And leave aside how much we can use it. But you're both using the website. Boy, the website says you have contracts, you're approved by, you're regulated by the Minnesota Department of Corrections. Isn't that enough? That's in there, clearly in their complaint. And they have agreement with... It says you have an agreement with them for sure. No, Your Honor, we don't believe so. And just as an example... No, wait, wait. What don't you believe? I think that's paragraph 13 of the complaint. Yeah, Your Honor. And so when we look at... So tell me what I'm missing. So paragraph 13 says that Itascan has units that were licensed by the DHS and DOC. Through an interagency agreement between those entities. So again, if we go to the Sabry case, regulation is not enough. No, but wait, it says licensed and there's an agreement. Department of Corrections don't make agreements about things except corrections, right? Yes, Your Honor. But again, there's no allegation in this case as to whether, as to what tasks or duties were given or delegated to North Holmes. That's not in the complaint. And when we look at the high... How about saying it was delegated involuntary detention? They use that word two or three times. No, Your Honor, because again... Well, again, we don't believe that meets the equality standard. When we look at the High Pipe case, for example, that has been referred to in this case, that plant was in the custody of the state DOC. And the court found that there were specific contracts which delegated all of the authority or services to the defendant. So again, our view, Judge, is that these allegations are bare bones. They do not meet the Iqbal-Twombly standard for specificity, meaning of the minds, mutual understanding, et cetera. And Judge Wright, I think, properly focused on the fact that there was no plausible allegations that the state delegated these duties to North Holmes. Essentially, you know, from our perspective, Judge, this complaint boils down to Jane Doe asserting that she was involuntarily detained in the DOC program and then something terrible happened to her, which was the abuse by Mr. Wood. That, we think, can be addressed by the state law negligence claims, which will survive any decision by this court if the court decides to affirm Judge Wright. And so moving on, I want to touch on one point. Canobie County is alleged to have been the legal custodian of Jane Doe, but it's something more than that. If we look at paragraph 28 of the complaint, we raise this in our brief. The allegation is that Canobie County and Jane Doe's foster mother enrolled Jane Doe at the Itascan Center. Again, we believe that goes to the lack of joint activity, joint action. Counsel, doesn't the record show that she was the legal custodian of the county and not the foster parent? Yes, well, Judge, the pleading states that Canobie County was the legal custodian and that the foster mother then jointly enrolled Doe as we read the complaint. There was a joint enrollment by the county and Jane Doe's foster mother.  So, Judge Wright focused on the lack of specificity on acting in concert allegations. And I'd like to focus on that. If we look at paragraphs 51 and 62 of the complaint, again, in our view, this is a bare bones pleading, but they don't really describe how the state, Canobie County, acted in concert with North Homes to place Jane Doe in the secure program. And we think that runs afoul of Iqbal and Twombly and the case law. One case that we cited, I just want to point out is that the PG versus Ramsey case, which we cited in our materials, a district court case from 2001 in Minnesota, foster parents are not state actors. So, we pointed out to the courts that from an initial proposition perspective, Jane Doe has not challenged her initial placement at North Homes. Before your time's up, counsel, before your time's up, did you not address the Americans United case in your brief? It's not in your brief, is it? You know the Americans United case, the prison case from 05 or some such year. Did you not address it in your brief at all? Am I right? Oh, it's 07. I think you might be correct, Judge. Say it again. I think you're correct on that. Okay. Do you want to talk about it? Because, you know, your opposing counsel said that may bind this panel. All we have to say is in Iowa, they went to a separate wing for religious reasons, and here they went for being a juvenile. Well, your honor, our view is that that case is not binding on this court, and it would be persuasive only in our view. And again, we take the position that North Homes is not a jail. They are not a prison. They're a separate entity. And there's one case law that we're aware of in the Eighth Circuit that holds that a has been held to be a state actor. So I think that's an open question that this court will have to analyze. It's open in this circuit, right? It's what you carefully said, right? That's right. It wouldn't be in the Fifth Circuit. Is there another circuit where it wouldn't be an open question? Let me check, Judge. I'm not aware of one as I stand here, your honor. Okay, I'm just pretty confident only in the Fifth Circuit. So proceed. All right. So anyway, moving forward, your honors, in our view, this close nexus that is required between North Homes on the one hand and the state on the other has not been plausibly alleged. It just does not exist. When we look at the Twombly case, we need more than the bare bones allegation that the defendant unlawfully harmed me. We think this complaint falls into that framework. There's no mutual understanding or meeting of the minds in terms of what actually the And the complaint says that she was placed there for behavioral issues. So from our perspective, just on its face, we question whether that's been properly pled as a constitutional violation in terms of the reasoning behind it. So in closing, your honors, we would ask this court to affirm the district court's conclusion that Jane Doe did not plausibly allege that North Homes and Connie Ross acted under color of state law to deprive Jane Doe of any constitutionally protected rights. And I would thank the court today for its time. Thank you, Mr. Leighton. Mr. Storms, your rebuttal. Yes, your honor. Under the 12B6 standard, my client's supposed to be believed. And my client has alleged that this is a juvenile detention center, that it is a correctional unit that she was maintained in. And what the district court did, and what I believe my colleague Mr. Leighton just did, was ask this court to say, well, we're really more of a medical institution than we are a correctional and detention center. And that's not the type of determination that can be made on a 12B6 motion. That's exactly why the Supreme Court has said we need to sift through facts to determine state action, and why routinely cases hold that detention correctional facilities do satisfy or are a public function. Are you familiar with the Robert S. case out of the Third Circuit? I am, your honor. How do you distinguish that? Very, very easily, your honor. Exactly the way the CKB Northwestern Human Services case did, your honor, out of the, I think it was the Eastern District, which said exactly what we have present here. The facility in CKB Northwestern Human Services was in part correctional and licensed by the Department of Corrections in Pennsylvania, whereas in the Robert S. opinion was not. And the Robert S. opinion actually had to distinguish itself from the Tenth Circuit opinion in Malonis, which also had noted that its facility was both a rehabilitation and correctional detention center. So, your honor, I believe that the case law has already done that quite well for us. And I believe if the court did what we've done in Minnesota so far in the Roe v. North Holmes and the Youth Services International case, that this matter should be remanded and we should proceed with discovery, your honors. Thank you, Mr. Storms. Thank you, both counsel. We appreciate your appearance. Case is submitted and we will issue an opinion in due course.